VIRGIL STATE BANK, Appellant, v. MILLER, Respondent.

(167 N. W. 234.)

(File No. 4194.   Opinion filed April 12, 1918.)

1.   **Banks and Banking—Suit for Moneys Advanced—Charging Defendant's Account, Checks Drawn by Alleged Agent—Sufficiency of Evidence re Finding.**

In a suit by a bank to recover for money advanced by it upon checks drawn by an alleged agent of defendant, **held,** that a finding that certain checks and drafts, charged by plaintiff to defendant's bank account, and paid by the bank, were not drawn by defendant by his agent, and that payment

thereof by plaintiff was not justified, was justified under the evidence.

2.  Same—Livestock Dealings on Defendant's Bank Account, Through Agent—Failure of Bank to Require Delivery of Bills of Lading, Effect—Finding Approved.

Where, in a suit by a bank to recover for moneys advanced by it upon checks drawn by an alleged agent of defendant, trial court found that under the agreement between the bank, the defendant's bank account would be used by one M. in livestock dealings, that M. should make sight drafts upon bills of lading procured by him, for proceeds of stock shipped and sold to drawee of the drafts, and deliver the bills of lading to the bank as security for funds advanced by it on such drafts, but that M. failed, and plaintiff neglected, to have them so delivered, that the bank permitted the cattle to be shipped by M. in his own name without taking such security, that certain loss on a dishonored draft was dealt with by plaintiff by taking M's note, which was thereafter returned to M., and defendant's account charged with the amount, and that the bank had no authority from defendant to do so, held, that evidence sustained the finding, and that conclusion of law that plaintiff's loss on the draft was caused by its own negligence, was justified.

Appeal from Circuit Court, Beadle County.   Hon. ALVA E. TAYLOR, Judge.

See, 36 S. D. 23, 153 N. W. 904.

Action by the Virgil State Bank, against S. M. Miller, to recover for moneys advanced upon certain checks alleged to have been drawn by defendant by an alleged agent. From a judgment for defendant, and from an order denying a new trial, plaintiff appeals.   Affirmed.

*E. E. Wagner,* for Appellant.

*Null & Royhl,* for Respondent.

GATES, J.   Reference is made to 36 S. D. 23, 153 N. W. 904, for a partial understanding of the case.   The case is now before us upon the former evidence, but upon new findings of fact, conclusions of law, and judgment.   As will be seen from the allegations of the complaint quoted in the former opinion, it was claimed that defendant was indebted to plaintiff "for money advanced by it, and paid by it upon certain checks drawn by the defendant, by one C. B. Miller, his agent duly authorized thereto."

The trial court has found that during the months of July,

August, and September, 1911, checks and drafts aggregating $1,912.99 were charged to defendant's account in plaintiff's bank which were not drawn by defendant by C. B. Miller, his agent, and no testimony was offered justifying their payment or showing agency in the persons purporting so to act as defendant's agents. The trial court also found that the sum of $3,622.56, being the amount of loss on a sight draft for $9,995, drawn by C. B. Miller personally upon Chicago commission merchants and cashed by plaintiff, was wrongfully charged to defendant's bank account. By reason of these facts the court concluded that there was no overdraft. Plaintiff appeals from the judgment and order denying a new trial.

[1, 2]   So far as the items aggregating $1,912.99 are concerned, there is nothing further to be said. The determination of the court was fully justified. As to the last item, we deem it proper to a complete understanding of the situation to reproduce the following portion of the findings of fact, viz:

"That when said account was opened the defendant stated to the officers of plaintiff bank that said C. B. Miller would engage in the purchase and sale of stock at and in the vicinity of Virgil, and that the said bank account of the defendant would be used by said C. B. Miller for that purpose, and that when stock was purchased by said C. B. Miller it should be shipped and consigned to commission merchants at Chicago and other points for sale, and that said C. B. Miller should get bills of lading and make sight drafts on said commission merchants for the proceeds of stock so shipped and sold by him *and deliver such bills of lading to the bank honoring the sight draft as security for funds advanced on such sight drafts,* and that said C. B. Miller from time to time between the dates above mentioned followed that practice in the shipment and sale of stock so purchased by him, *except as hereinafter shown.*"

This finding, except the italicized portion, was a finding requested by plaintiff. The last italicized clause refers to the items above mentioned. The first italicized portion was sustained by the evidence of defendant. The determination of whether or not that clause should be inserted in the finding rested upon the credibility of witnesses. The trial court believed the defendant. We cannot now say it should not have done so.

After describing the purchase of cattle and their shipment, and the drawing and depositing of the draft for $9,995 in plaintiff bank, the court further found:

"That payment thereof was demanded and refused, but that later the sum of $6,375.02 was remitted by said Rice Bros. to the plaintiff bank and placed to the credit of defendant's account by the plaintiff bank; * * * that the said C. B. Miller and the plaintiff neglected and omitted to have the bill of lading for said cattle so shipped to Rice Bros. by said C. B. Miller turned over to the bank as security for said sight draft, and that the plaintiff bank neglected and omitted to secure by wire or otherwise an acceptance of said sight draft before the shipment of said cattle although requested by C. B. Miller so to do; that the plaintiff bank permitted the cattle to be shipped by said C. B. Miller in his own name without any form of security whatever for the payment of said sight draft, except that at that time the plaintiff bank held a letter of credit from Rice Bros. in which Rice Bros. agreed to honor drafts drawn on them by C. B. Miller for the purchase price of cattle purchased by him and consigned to Rice Bros.; that upon the dishonor of the sight draft for $9,995 the plaintiff bank first took from C. B. Miller a promissory note, executed by C. B. Miller for the amount of such sight draft; that subsequently this note was returned by the plaintiff bank to C. B. Miller, and the amount of said sight draft together with $2.58 protest fees and charges was charged by the plaintiff bank to the account of defendant, S. M. Miller, thus charging the defendant, S. M. Miller, with the loss of $3,622.56 in said transaction; that the plaintiff bank had no authority from the defendant, S. M. Miller, to charge these items to his account."

We are of the opinion that these findings of fact are fully sustained by the evidence, and that the conclusion of law to the effect that plaintiff's loss on this draft was caused by its own negligence was justified.

The judgment and order appealed from are affirmed.